777 S.E.2d 547

ABBEVILLE COUNTY SCHOOL DISTRICT,
et al., Appellants–Respondents,

v.

The STATE of South Carolina, et al., of whom Hugh K. Leatherman, Sr., as President Pro Tempore of the Senate and as a representative of the South Carolina Senate and James H. Lucas, as Speaker of the House of Representatives and as a representative of the South Carolina House of Representatives are, Respondents–Appellants,

and

State of South Carolina, Nikki R. Haley, as Governor
of the State of South Carolina, are, Respondents.

Appellate Case No. 2007–065159.

Supreme Court of South Carolina.

Sept. 24, 2015.

## ORDER

On November 12, 2014, a majority of this Court found that the State of South Carolina, Governor Nikki R. Haley, President Pro Tempore Hugh K. Leatherman, Sr., and the South Carolina Senate, and Speaker Pro Tempore James H. Lucas and the South Carolina House of Representatives (collectively, the Defendants) violated their constitutional duty to ensure that the students of South Carolina receive a minimally adequate education. *Abbeville County School District v. State* (*Abbeville II* ), 410 S.C. 619, 624, 767 S.E.2d 157, 159 (2014).[1]

---

1. Specifically, the Court found that the Defendants had enacted what appeared to be a robust educational scheme; however, despite the Defendants' good intentions, the Record demonstrated that the statutory scheme resulted in abysmal student and school district performance. *Abbeville II*, 410 S.C. at 633–42, 767 S.E.2d at 164–69. The Court noted that the evidence at trial demonstrated that insufficient transportation, poor teacher quality, high teacher turnover, local legislation, school district size, and poverty all potentially contributed to the problems facing the Plaintiff Districts. *Id.* at 642–50, 654–55, 767 S.E.2d at 169–73, 175–76.

The Court recognized that the "principle of separation of powers directs that the legislature, not the judiciary, is the proper institution to

Moreover, the Court stated that the Plaintiff Districts were partially responsible for their own problems, at times prioritizing popular programs such as student athletics above the academic environment. *Id.* at 660, 767 S.E.2d at 178. Therefore, the Court noted that "the Plaintiff Districts must work in concert with the Defendants to chart a path forward which appropriately prioritizes student learning," rather than placing sole blame on the Defendants. *Id.* at 660, 767 S.E.2d at 178–79.

To ensure the parties' compliance, the Court ordered "both the Plaintiff Districts and the Defendants to reappear before this Court within a reasonable time . . . and present a plan to address the constitutional violation announced today, with special emphasis on the statutory and administrative pieces necessary to aid the myriad troubles facing these districts at both the state and local levels." *Id.* at 661, 767 S.E.2d at 179. Until that time, the Court retained jurisdiction of the case. *Id.*

Following the Court's ruling, Speaker Pro Tempore Lucas formed the House Education Policy Review and Reform Task Force (the House Task Force). The House Task Force has conducted public hearings and is developing remedies addressing the findings of the Court. Similarly, President Pro Tempore Leatherman formed the Senate Finance Special Subcommittee for Response to the *Abbeville* Case (the Senate Special Subcommittee), which is in the process of developing remedies addressing the Court's findings. The Plaintiff Districts also formed a committee of education experts and others following the ruling to develop remedies addressing the Court's findings. The Plaintiff Districts reduced their proposed remedies

---

make major educational policy choices." *Id.* at 655–56, 767 S.E.2d at 176. Thus, the Court "charged [the Defendants] with identifying the issues preventing the State's current efforts from providing the requisite constitutional opportunity," ordering them "to take a broader look at the principal causes for the [poor student and district performance] beyond mere funding." *Id.* at 653, 660, 767 S.E.2d at 175, 178. To that end, the Court stated that it would likely be necessary to hold "lengthy and difficult discussions regarding the wisdom of continuing to enact multiple statutes which have no demonstrated effect on educational problems, or attempting to address deficiencies through underfunded and structurally impaired programming." *Id.* at 660, 767 S.E.2d at 178.

to writing and presented them to the House Task Force and the Senate Special Subcommittee.

On June 18, 2015, the Plaintiff Districts filed a motion for entry of a supplemental order proposing a detailed framework and requesting the Court establish a more concrete timeline for addressing the constitutional violations announced by the Court in *Abbeville II*. We grant the Plaintiff Districts' motion as amended and order as follows:

1. To facilitate the discussions and work of the House Task Force and the Senate Special Subcommittee, and to assist this Court, the parties will engage a panel of three experts (the expert panel) by October 15, 2015. The panel will be tasked with the responsibility of identifying the educational needs of students in the Plaintiff Districts by: (1) examining the various defects detailed in the Court's analysis in *Abbeville II*—including alarmingly-low student and school district performance, insufficient transportation, poor teacher quality, high teacher turnover, local legislation, school district size, and poverty; and (2) proposing remedies which address these educational needs and constitutional defects. The Defendants shall select one of the experts and bear the cost of that expert. The Plaintiff Districts shall select one of the experts and bear the cost of that expert. The third expert shall be the State Superintendent of Education, who has agreed to serve on the panel. These experts will bring their expertise to bear and to serve as facilitators in helping marshal information and obtain proper input from the various stakeholders, including the Plaintiff Districts, the Defendants, the House Task Force, and the Senate Special Subcommittee. The expert panel will be granted access to meetings with such office holders, school districts, and state personnel as is necessary to perform their work.

2. By February 1, 2016, the Defendants will present to the expert panel their plan for implementing a constitutionally compliant education system, and will send a copy of the proposed plan to the Plaintiff Districts and the Court. Proposed legislation supporting the plan shall be drafted prior to the meeting and presented at the meeting. Staffing and other critical needs may require

time to fully implement the plan, but the plan and proposed legislation shall specifically provide reasonable dates for their full implementation.

3. By March 1, 2016, the Plaintiff Districts will present to the expert panel their reaction to the Defendants' proposed plan.

4. By March 15, 2016, the expert panel will present a written report that includes its assessment of whether the Defendants have proposed a viable plan for remedying the constitutional violations and provide it to the parties and the Court. The report will include a description of the panel's recommended methodology for assessing constitutional compliance. Should the experts disagree on parts of this report, the experts shall so note their disagreement in the report.

5. The Court will conduct a de novo review of the Defendants' plan and the expert panel's report and recommendations on implementing a constitutionally-compliant education system. As the Court assesses whether the plan and the report provide a remedy for the constitutional defects identified in *Abbeville II*, it should give due consideration to the General Assembly's prerogative to choose the methodology by which the constitutional violation shall be remedied, and give due consideration to the expertise of the panel members chosen.

6. The Court will issue an order after conducting its review of the plan and the expert panel's findings stating whether the plan is a rational means of bringing the system of public education in South Carolina into constitutional compliance, and whether the Court's continued maintenance of jurisdiction is necessary.

IT IS SO ORDERED.

s/Jean H. Toal, C.J.

s/Donald W. Beatty, J.

s/Kaye G. Hearn, J.

Justice KITTREDGE.

Because I adhere to my view that this Court has violated fundamental separation of powers principles by involving itself

in a matter that lies exclusively in the Legislative Branch, I would deny the motion of the Plaintiff Districts.

s/John W. Kittredge, J.

s/Costa M. Pleicones, J.